IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDRE D. GOLDSMITH, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 25-CV-7428 |
| | : | |
| ABSOLUTE RESOLUTIONS | : | |
| INVESTMENTS, LLC, | : | |
| Defendant. | : | |

**MEMORANDUM**

**BAYLSON, J.**                                                      **MARCH   31, 2026**

Plaintiff Andre D. Goldsmith initiated this civil action by filing a *pro se* Complaint

against Absolute Resolutions Investments, LLC ("ARI") raising claims under the Fair Credit

Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, and the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. §§ 1692-1692p.  He also seeks leave to proceed *in forma pauperis*.  For

the following reasons, the Court will grant Goldsmith *in forma pauperis* status and dismiss his

Complaint.

I.      **FACTUAL ALLEGATIONS**[1]

Goldsmith's allegations are brief.  He alleges that he is a consumer, and ARI is "a debt

collector and furnisher of information."  (Compl. at 1, 6.)  Goldsmith claims that he "discovered

inaccurate, incomplete, or misleading credit reporting on his consumer file."  (*Id.* at 1.)  He avers

that on April 8, 2025, "Experian deleted two Navy Federal Credit Union tradelines after

determining they were inaccurate."  (*Id.* at 6.)  He claims that despite the deletion, ARI "re-

reported the same alleged debts to consumer reporting agencies using altered account numbers,

causing the accounts to reappear" and "failed to provide the required reinsertion certification and

---

[1] The allegations are taken from Goldsmith's Complaint (ECF No. 2).  The Court adopts the
sequential pagination supplied by the CM/ECF docketing system.

consumer notice" in accordance with 15 U.S.C. § 1681i(a)(5)(B).[2]  (*Id.*)  He avers that ARI acquired the accounts on September 16, 2025, but did not mail a validation notice until October 29, 2025.  (*Id.*)  Goldsmith received the validation notice on November 6, 2025, allegedly in violation of "statutory notice requirements."  (*Id.*)

Goldsmith avers that he "disputed ARI's reporting through consumer reporting agencies" and filed "multiple CFPB complaints, placing ARI on actual notice of inaccuracies."  (*Id.* at 1, 6.)  He claims that in response to the CFPB complaints, ARI admitted to the "[c]ontinued furnishing of disputed information," a "[r]efusal to conduct further investigation," and the "[i]mproper labeling of disputes as 'frivolous.'"  (*Id.* at 6.)  Goldsmith claims that following his "disputes and CFPB complaints, consumer reporting agencies removed additional positive, undisputed tradelines," which is evidence of "retaliatory credit reporting conduct linked to ARI's furnishing activity."  (*Id.*)  He does not identify when or what tradelines were removed.  He alleges without further explanation that ARI's conduct was willful and reckless.  (*Id.*)

Goldsmith alleges that the following FCRA statutes have been violated:  15 U.S.C. § 1681e(b) (failure to maintain reasonable procedures); 15 U.S.C. § 1681i (failure to conduct reasonable reinvestigation); 15 U.S.C. § 1681i(a)(5)(B) (illegal reinsertion after deletion); 15 U.S.C. § 1681g (failure to provide complete and accurate file); 15 U.S.C. § 1681n (willful noncompliance); 15 U.S.C. § 1681o (negligent noncompliance); 15 U.S.C. § 1681s-2(a)(1)(A) (furnishing inaccurate information); 15 U.S.C. § 1681s-2(a)(8) (improper "frivolous dispute" designation); and 15 U.S.C. § 1681s-2(b) (failure to conduct a reasonable reinvestigation).[3]  (*Id.*

---

[2] As explained in more detail below, the duties defined by 15 U.S.C. § 1681i apply only to consumer reporting agencies.  *See infra* footnote 5. Goldsmith alleges that ARI is "a debt collector and furnisher of information."  (Compl. at 6.)

[3] In some instances, Goldsmith references a provision by its FCRA section number as opposed to its codification in the United States Code.  For example, Goldsmith's reference to FCRA § 611

at 1, 4-5, 7-8.)  He also alleges that the following FDCPA statutes have been violated:  15 U.S.C. § 1692e(8) (false credit reporting) and 15 U.S.C. § 1692g(b) (continued collection activity).[4] (*Id.* at 4-5, 8.)

Goldsmith claims that he suffered credit score loss, credit score suppression, loss of positive credit history, increased difficulty in obtaining housing and credit, emotional distress, and out of pocket costs.  (*Id*. at 1, 8.)  He seeks permanent deletion of all ARI-related tradelines, "injunctive relief barring future furnishing," and monetary damages in an unspecified amount. (*Id.* at 9.)

## II.    STANDARD OF REVIEW

Because Goldsmith appears to be incapable of paying the filing fees to commence this action, the Court will grant him leave to proceed *in forma pauperis*.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint,

---

corresponds to 15 U.S.C. § 1681i and likewise, FCRA § 623 corresponds to 15 U.S.C. 1681s-2. (*See* Compl. at 7.)  For purposes of this Memorandum, the Court will cite to the federal code citations.

[4] Goldsmith's reference to FDCPA § 807(8) corresponds to 15 U.S.C. § 1692e(8); FDCPA § 809(b) corresponds to 15 U.S.C. § 1692g(b).  (*See* Compl. at 4-5.)

liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Because Goldsmith is proceeding *pro se*, the Court construes his allegations liberally. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

Furthermore, the Court must dismiss any claims over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Grp. Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*"). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence."). The Court's continuing obligation to assure its jurisdiction includes an assessment of whether the plaintiff has standing to raise his claims. *Seneca Res. Corp. v. Township of Highland*, 863 F.3d 245, 252 (3d Cir. 2017) ("Our 'continuing obligation' to assure that we have jurisdiction requires that we raise issues of standing . . . sua sponte.").

III.   DISCUSSION

A. FCRA Claims

"The FCRA was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010) (cleaned up). In the language of the FCRA, consumer

4

reporting agencies "collect consumer credit data from 'furnishers,' such as banks and other lenders, and organize that material into individualized credit reports, which are used by commercial entities to assess a particular consumer's creditworthiness." *Seamans v. Temple Univ.*, 744 F.3d 853, 860 (3d Cir. 2014). Consequently, the FCRA places certain duties on those who furnish information to consumer reporting agencies, such as requiring furnishers to correct any information they later discover to be inaccurate. *Bibbs v. Trans Union LLC*, 43 F.3d 331, 339 (3d Cir. 2022) (citing *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 357 (3d Cir. 2011); 15 U.S.C. § 1681s-2(a)(2)).

Section 1681s-2(b) is the only section of the FCRA "that can be enforced by a private citizen seeking to recover damages caused by a furnisher of information" such as ARI.[5] *Eades v. Wetzel*, 841 F. App'x 489, 490 (3d Cir. 2021) (*per curiam*) (quoting *SimmsParris*, 652 F.3d at 358) (cleaned up)). The FCRA likewise provides for civil liability against furnishers for

---

[5] Goldsmith asserts violations pursuant to 15 U.S.C. §§ 1681e(b), 1681i, and 1681g. (Compl. at 1, 7.) The duties defined by these statutes apply only to consumer reporting agencies. Accordingly, to the extent Goldsmith's Complaint refers to obligations of consumer reporting agencies, he has not stated a basis for a claim against ARI based on those provisions because there is no suggestion that ARI is a such an agency. *See Peterson v. Great Midwest Bank*, No. 25-1386, 2026 WL 115014, at *5 (E.D. Wis. Jan. 15, 2026) (concluding that plaintiff's claims under § 1681e(b) must be dismissed because that section does not apply to information furnishers); *Hastings v. Citizens Bank*, No. 17-1901, 2020 WL 1550749, at *2 (D. Or. Apr. 1, 2020) (recognizing that "§ 1681e(b) and § 1681i do not apply to furnishers"); *Sites v. Nationstar Mortg. LLC*, 646 F. Supp. 2d 699, 705 (M.D. Pa. 2009) (stating that § 1681g and § 1681h "speak exclusively to consumer reporting agencies" as opposed to users or furnishers of information) (citing 15 U.S.C. §§ 1681g, 1681h); *Leet v. Cellco P'ship*, 480 F. Supp. 2d 422, 430 (D. Mass. 2007) (Because "Verizon is a 'furnisher of information,' [and] not a consumer reporting agency," §§ 1681g and 1681h do not apply.).

In addition, although Goldsmith asserts claims pursuant to 15 U.S.C. 1681s-2(a), this subsection does not include a private right of action for consumers. *See Tauro v. Cap. One Fin. Corp.*, 684 F. App'x 240, 242 n.2 (3d Cir. 2017) (*per curiam*) (noting that the FCRA prohibits private enforcement of the duties arising under § 1681s-2(a)) (citing *Seamans*, 744 F.3d at 864). Any FCRA claims based on violations of 15 U.S.C. §§ 1681e(b), 1681i, 1681g, and 1681s-2(a) will be dismissed.

noncompliance due to willfulness and negligence.  *See* 15 U.S.C. §§ 1681n, 1681o.  To state a plausible claim against a furnisher of credit information under § 1681s-2(b), as Goldsmith attempts to do in this case, a plaintiff must allege that he "[1] filed a notice of dispute with a consumer reporting agency; [2] the consumer reporting agency notified the furnisher of information of the dispute; and [3] the furnisher of information failed to investigate and modify the inaccurate information."  *Harris v. Pa. Higher Educ. Assistance Agency/Am. Educ. Servs.*, No. 16-693, 2016 WL 3473347, at *6 (E.D. Pa. June 24, 2016) (collecting cases), *aff'd*, 696 F. App'x 87 (3d Cir. 2017) (*per curiam*); *see also* 15 U.S.C. §§ 1681s-2(b).  "[T]here must be some threshold showing of inaccuracy to make a claim against a furnisher."  *Holland v. Trans Union LLC*, 574 F. Supp. 3d 292, 302 (E.D. Pa. 2021).  "Information is 'inaccurate' within the meaning of the FCRA if it is incorrect or 'misleading in such a way and to such an extent that it can be expected to have an adverse effect.'"  *Id*. (quoting *Seamans*, 744 F.3d at 865).

A plaintiff must also establish that he has standing to bring an FCRA claim.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  To do so, he must "clearly allege facts demonstrating" that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Id.* (alterations and citations omitted).  As to the first requirement, a plaintiff's injury must be concrete and particularized.  *TransUnion LLC v. Ramierz*, 594 U.S. 413, 423-24 (2021).  A statutory violation does not automatically translate into standing to sue.  *Id.* at 425-26.  Rather, a plaintiff must allege either tangible harm—such as physical or monetary harm—or intangible harm that bears "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts."  *Id.* at 425 (citing *Spokeo*, 578 U.S. at 340-41).  If a credit report contains misleading information but that information was never disseminated, a plaintiff does not suffer

6

concrete harm for purposes of establishing standing. *George v. Rushmore Serv. Ctr., LLC*, 114 F.4th 226, 235 (3d Cir. 2024) (citing *TransUnion*, 594 U.S. at 433-35).

Goldsmith states that he suffered credit score loss, credit score suppression, loss of positive credit history, increased difficulty in obtaining housing and credit, emotional distress, and out of pocket costs. (Compl. at 1, 8.) However, he has not adequately explained how ARI's inaccurate reporting caused the claimed harm. For instance, he has not alleged what housing and credit he applied for and how or why it was difficult or denied, so as to support an inference that any credit denial is traceable to ARI's alleged misreporting of a debt. *See Hayward v. USAA Fed. Sav. Bank*, No. 24-5602, 2025 WL 1094255, at *4 (E.D. Pa. Apr. 11, 2025) (holding that plaintiff's "conclusory statement that as a direct result of Kik Off's alleged actions, she has suffered a credit denial, with no factual information about who denied her credit and why the denial is traceable to Kik Off's conduct" failed to allege "concrete injuries" for purposes of the standing inquiry (cleaned up)). Although Goldsmith alludes to "amplified harm" because he is "SSI-disabled," he does not provide any further context about how any monetary harm could be reasonably attributed to the alleged error on his credit report. Further, Goldsmith's allegations of emotional harm are too undeveloped and conclusory to allege standing. *See Byrd Est. v. Nationstar Mortg., LLC*, No. 24-1063, 2025 WL 3172843, at *5 (E.D. Pa. Nov. 13, 2025) (finding allegations of "economic harm, reputational damage, litigation costs, and emotional distress" to be "no more than conclusions" that "are not entitled to the assumption of truth" (citations omitted)); *see also Filgueiras v. Midland Funding, LLC*, No. 16-3037, 2025 WL 2637171, at *6 (D.N.J. Aug. 22, 2025) ("[S]parsely identified alleged harm is insufficient to confer standing."), *report and recommendation adopted*, 2025 WL 2636416 (D.N.J. Sept. 11, 2025). In sum, the Complaint does not plausibly allege Goldsmith suffered concrete harm

traceable to ARI's conduct in a manner that would permit the Court to conclude he has standing to pursue his FCRA claims.

Further, even assuming Goldsmith has standing to pursue his FCRA claims, he has not plausibly stated a claim under § 1681s-2(b) because his allegations of inaccuracies are undeveloped. Goldsmith's merely invoking the FCRA and alleging that ARI "failed to conduct a reasonable investigation, failed to review underlying account documentation, and continued furnishing inaccurate information" (Compl. at 7) is entirely conclusory and, thus, implausible. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"); *Schiano v. HomEq Servicing Corp. & HomEq Servicing*, 832 F. App'x 116, 120 (3d Cir. 2020) (allegations that defendant failed to "'fully and properly investigate' the matter" were conclusory and did not state a claim); *Anyaegbunam v. ARS Acct. Resol., LLC*, No. 21-13409, 2022 WL 1558474, at *3 (D.N.J. May 17, 2022) (dismissing complaint that merely set forth threadbare allegations and a formulaic recitation of the statutory elements of plaintiff's FCRA claims). Accordingly, his FCRA claim against ARI must be dismissed.

### B. FDCPA Claims

The FDCPA "provides a remedy for consumers who have been subjected to abusive, deceptive or unfair debt collection practices by debt collectors." *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 232 (3d Cir. 2005). To state a claim under the FDCPA, a plaintiff must allege that (1) he "is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 470 (3d Cir. 2021) (internal citation omitted). Where a plaintiff fails to allege facts supporting each of these elements, the FDCPA claim is not

plausible.  *See Humphreys v. McCabe Weisberg & Conway, P.C.*, 686 F. App'x 95, 97 (3d Cir. 2017) (*per curiam*) (concluding that the FDCPA claim was not pled based on "conclusory and speculative statements that cannot survive a motion to dismiss").

Before the Court assesses whether Goldsmith has stated plausible FDCPA claims, it must address whether he has sufficiently alleged standing to pursue each of the claims.  Because the types of injuries that confer standing differ among FDCPA claims, the Court must consider whether Goldsmith has sufficiently alleged standing with respect to each of his FDCPA claims. *See Uzor v. Flink*, 25-1873, 2025 WL 1646573, at *3 (E.D. Pa. June 9, 2025).

### 1.  Section 1692g(b) Claim

Goldsmith avers that ARI "continued reporting while disputes were unresolved" and its "validation was defective or untimely" in violation of 15 U.S.C. § 1692g(b).  (Compl. at 8.)  He also alleges without further explanation that ARI acquired "accounts on September 16, 2025" but the "validation notice was not mailed until October 29, 2025, and not received by [him] until November 6, 2025, violating statutory notice requirements."  (*Id.* at 6.)

Section 1692g generally sets forth the procedures and responsibilities for a consumer and a debt collector when a consumer disputes the validity of a debt with a debt collector.  *See* 15 U.S.C. § 1692g(a)-(e).  Section 1692g(b), which Goldsmith specifically cites, provides that:

> If the consumer notifies the debt collector in writing within the thirty-day period described by [§ 1692g(a)] that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt . . . until the debt collector obtains a verification of the debt . . . .

15 U.S.C. § 1692g(b).  Section 1692g(a) requires a debt collector to send a notice with certain information about the debt "[w]ithin five days after the initial communication with a consumer in connection with the collection of [that] debt," unless that information is already contained in the initial communication.  15 U.S.C. § 1692g(a); *see also Szczurek v. Pro. Mgmt. Inc.*, 627 F. App'x

57, 62 (3d Cir. 2015) ("Section 1692g(a) explicitly identifies the information that a debt collector must include in a debt collection letter, such as the amount of the debt, the name of the creditor to whom the debt is owed, and the procedures available to the consumer should he dispute the validity of the debt.").  Section 1692g(a) also requires that the written notice inform the consumer that, if he "notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt" and mail it to the consumer.  15 U.S.C. § 1692g(a)(4).  Interpreting these two sections together, "[s]ection 1692g(b) guarantees that, if a consumer invokes [his] § 1692g(a) right to request information about a debt, and the consumer invokes this right in writing and within the thirty-day period prescribed by statute, a debt collector must 'cease collection of the debt' until it has provided the requested information to the debtor." *Deutsch v. D&A Servs. LLC*, No. 22-1042, 2023 WL 2987568, at *1 (3d Cir. Apr. 18, 2023).

In assessing whether Goldsmith has standing to assert a claim under § 1692g(b), the Court notes that he appears to assert an "informational injury" in connection with this claim.  An informational injury—*i.e.*, one where the plaintiff "fails to receive information to which he is legally entitled"—can be "sufficiently concrete to confer standing." *Kelly v. RealPage Inc.*, 47 F.4th 202, 213 (3d Cir. 2022) (cleaned up).  A plaintiff asserting an informational injury must show "(1) the omission of information to which they claim entitlement, (2) 'adverse effects' that flow from the omission, and (3) the requisite nexus to the 'concrete interest' Congress intended to protect." *Id*. at 214; *see also Pub. Int. Legal Found. v. Sec'y Commonwealth of Pennsylvania*, 136 F.4th 456, 464 (3d Cir. 2025) ("[A] plaintiff seeking to assert an informational injury must establish *a nexus* among the omitted information to which she has entitlement, the purported harm *actually caused* by the specific violation, and the '*concrete interest*' that Congress

10

identified as 'deserving of protection' when it created the disclosure requirement." (quoting *Kelly*, 47 F.4th at 213)).

Goldsmith has not properly alleged that he suffered an informational injury necessary to confer standing to assert his § 1692g(b) claim.  First, he does not allege that ARI failed to provide him with any information to which he was entitled.  Rather, he alleges only that a "validation notice" was "late or improper."  (Compl. at 4-6.)  It is not clear from the Complaint what information Goldsmith was provided by ARI or how its validation was late, improper, or defective.  Notably, Goldsmith does not identify or clearly describe the nature of the consumer debt underlying this claim, and he does not specifically allege when (or if) he disputed a debt.  Goldsmith also does not provide any factual allegations to explain his assertion that ARI "continued reporting while disputes were unresolved."

Even if ARI's validation was somehow defective, or it did continue "reporting while disputes were unresolved," Goldsmith nevertheless lacks standing, as he has not alleged any "adverse effects" that flow from these acts.  "An asserted informational injury that causes no adverse effects cannot satisfy Article III." *Pub. Int. Legal Found.*, 136 F.4th at 464 (quoting *TransUnion*, 594 U.S. at 442).  Goldsmith states only that ARI allegedly violated § 1692g(b) by not properly validating the alleged debt.  He provides no information explaining his allegation that ARI "continued reporting," and he alleges no other consequence of ARI's actions.  Simply alleging that ARI should have but failed to provide certain information under the FDCPA is insufficient to confer standing.  *See George v. Rushmore Serv. Ctr.*, LLC, 114 F.4th 226, 236 (3d Cir. 2024) (concluding that the plaintiff did not show an informational injury to confer standing when she simply alleged that the debtor failed to provide information about "to whom the alleged debt was owed and if it was legitimate" and did not allege any downstream financial consequences or other adverse effects); *see also Pub. Int. Legal Found.*, 136 F.4th at 465 ("[I]t is

11

insufficient for Article III standing purposes for a plaintiff asserting an informational injury from a violation of a statute that contains a public disclosure aspect as part of its overall scheme to allege only that he has been denied information."). Accordingly, Goldsmith has not alleged that he suffered an informational injury and has thus not met his burden in establishing standing to assert a claim under § 1692g(b).

Even if Goldsmith had properly alleged standing, he nevertheless failed to state a plausible FDCPA claim. He does not allege any information about an initial communication from ARI, *see* 15 U.S.C. § 1692g(a), whether he exercised his right under § 1692g(a) in the appropriate period under the statute, *see* 15 U.S.C. § 1692g(b), or describe any efforts that ARI made to collect upon a debt. *See Tauro v. Asset Acceptance*, No. 12-00418, 2012 WL 2359954, at *3 (W.D. Pa. June 20, 2012) (dismissing § 1692g(b) claim as implausible because "[t]he Plaintiff does not allege that . . . the Defendants provided (or failed to provide) either an initial communication or validation notice containing the information required by law. In order to state a valid FDCPA claim, the Plaintiff must do so."); *Valderrama v. BBVA Compass*, No. 21-1776, 2021 WL 6065825, at *3 (N.D. Tex. Nov. 22, 2021), *report and recommendation adopted*, 2021 WL 6063618 (N.D. Tex. Dec. 21, 2021) (dismissing FDCPA claim where "Plaintiff also fails to assert any facts indicating that he properly disputed or sought validation of the debt, or that he has been the object of any collection activity by Defendants."). In sum, Goldsmith does not describe other than in conclusory terms how ARI's acts or omissions violated § 1692g(b) of the FDCPA.

Goldsmith's allegations parrot statutory language and are insufficient on their face to support a claim. *See Shareef v. Consumer Portfolio Servs. Inc.*, No. 21-4039, 2021 WL 5823011, at *3 (E.D. Pa. Dec. 7, 2021) ("Citing to the statute and repeating the language contained in the law is insufficient to state a claim without a description of what actions . . . [the

debt collector] took to give rise to the claim against it."); *see also Humphreys*, 686 F. App'x at 97 (concluding that FDCPA claim was pled based on "conclusory and speculative statements that cannot survive a motion to dismiss"); *Astarita v. Solomon & Solomon, PC*, No. 12-5670, 2013 WL 1694807, at *2 (D.N.J. Apr. 18, 2013) ("Plaintiff's Complaint is utterly devoid of any factual content - such as the specific debt which Defendant attempted to collect on, or details about the dates, times, and manner of the communications Defendant made to Plaintiff in attempting to collect on that unspecified debt - which would allow the Court to draw the reasonable inference that Defendant's actions violated any provision of the FDCPA.").

### 2.  Section 1692e(8) Claim

Goldsmith also asserts a claim under § 1692e(8), alleging that ARI "communicated credit information known to be disputed without proper dispute notation" and that this "conduct constitutes a false and misleading representation in connection with collection of a debt." (Compl. at 8.)  Section 1962e prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  To state a claim under § 1692e, a false statement "must be material when viewed through the least sophisticated debtor's eyes." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 421 (3d Cir. 2015); *see also Riccio v. Sentry Credit, Inc.*, 954 F.3d 582, 594 (3d Cir. 2020); *Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 150 (3d Cir. 2023) (stating that a court must consider "whether a debt collector's statement in a communication to a debtor would deceive or mislead the least sophisticated debtor.") (citing *Jensen*, 791 F.3d at 420).  "Because the standard is objective, 'the specific plaintiff need not prove that she was actually confused or misled, only that the objective least sophisticated debtor would be.'" *Id.* (citing *Jensen*, 791 F.3d at 419).

The basis for Goldsmith's § 1692e claim is not clear from his Complaint.  He alleges that ARI "communicated credit information known to be disputed" without notation, but he does not

13

identify what credit information was communicated, what notation was required, how ARI knew or should have known that the information it communicated was false, why or when the information was disputed, or to whom the information was allegedly communicated.  Based on the dearth of factual allegations, Goldsmith has not established that he has standing to assert a § 1692e claim.[6]  First, he has not established that he suffered an informational injury for the same reasons he did not allege an informational injury in connection with his § 1692g(b) claim. Goldsmith has not alleged that he suffered any adverse effects from any alleged communication of (unidentified) disputed credit information.  *See Pub. Int. Legal Found.*, 136 F.4th at 464; *George*, 114 F.4th at 236.

Second, Goldsmith has not established standing to assert a § 1692e claim under the traditional harm approach.  *See Huber*, 84 F.4th at 146 (explaining that under the traditional harm approach prescribed by the Supreme Court in *TransUnion*, courts should determine "whether an alleged injury has a close relationship to harm traditionally recognized as providing a basis for a lawsuit in American courts" (internal quotation marks omitted)).  The Third Circuit has determined that, under this approach, a violation of § 1692e is analogous to the tort of fraudulent misrepresentation.  *Id.* at 148.  By reference to fraudulent misrepresentation, the Court held that to establish standing, a § 1692e claimant "must identify . . . a consequential action or inaction following from the receipt of a misleading or deceptive" communication.  *Id*. at 149 (concluding that the plaintiff established standing because she not only alleged confusion but also that she had two resulting financial consequences due to the defendant's misleading and deceptive collection letter); *see also Martinez v. Jefferson Cap. Sys., LLC*, No. 23-22367, 2024 WL 3548943, at *2 (D.N.J. July 26, 2024) (concluding that plaintiff failed to demonstrate he

---

[6] For similar reasons, Goldsmith also fails to state a plausible claim, even if had properly pled standing.

suffered a concrete injury to confer standing where he merely alleged that the defendant's letter caused confusion and did not allege that he took any consequential action or inaction after receiving the letter).  Goldsmith has not alleged that he took any consequential action or inaction in response to ARI's alleged misrepresentation.  Accordingly, Goldsmith has also not established that he has standing to assert a § 1692e claim, either under the informational injury doctrine or under the traditional approach.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Goldsmith leave to proceed *in forma pauperis* and dismiss his Complaint without prejudice.  The Court will permit Goldsmith an opportunity to file an amended complaint if he demonstrates that he has standing to assert the FCRA and FDCPA claims and can correct the defects the Court has noted as to those claims.  An appropriate Order follows, which provides further instruction as to amendment.

BY THE COURT:

/s/ Michael M. Baylson

MICHAEL M. BAYLSON, J.

15